UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOHN J. TORPEY, ROBERT BARTELS, JR.,
CHRISTOPHER SHEERAN, ALEXANDER E.
GETTLER, RICHARD THOMPSON and
KENNETH DURR, as Trustees of THE
STEAMFITTERS' INDUSTRY PENSION FUND,

                      Plaintiff,                      REPORT AND
                                                            RECOMMENDATION
  -against-
                                                             CV 10-1404 (JS) (ETB)

RELIABLE FIRE PROTECTION CORP.,

                      Defendant.
------------------------------------------------------------------------x

TO THE HONORABLE JOANNA SEYBERT, United States District Judge:

       The plaintiffs, as Trustees of the Steamfitters' Industry Pension Fund (the "Pension Fund"), bring this action against the defendant, Reliable Fire Protection Corp. ("defendant" or "Reliable"), pursuant to Sections 502 and 4301 of the Employee Retirement Income Security Act of 1971 ("ERISA"), as amended, 29 U.S.C. §§ 1132, 1451, seeking to compel and collect the payment of withdrawal liability owed by the defendant. Plaintiffs request damages in the amount of $464,636.94.

## FACTS

       The Complaint in this action was filed on March 29, 2010. In the Complaint, the plaintiffs allege that Reliable participated in and contributed to the Steamfitters' Industry Pension Plan ("Pension Plan"), pursuant to the terms of a series of collective bargaining agreements

-1-

between Reliable and Local 638, the union in which Reliable was a participating employer. (Compl. ¶ 10.) On or about June 6, 2008, Reliable advised Local 638 that it was seeking to "disengage" its collective bargaining agreement with Local 638 such that Reliable would no longer operate as a union contractor. (Compl. ¶ 12 and Ex. A, annexed thereto.) This constituted a complete withdrawal from the Pension Plan such that Reliable permanently ceased to have an obligation to contribute to the Plan. (Compl. ¶¶ 14, 16.) However, by completely withdrawing from the Pension Plan, Reliable incurred withdrawal liability pursuant to § 4201 of ERISA, 29 U.S.C. § 1381. (Compl. ¶ 17.)

By letter dated September 8, 2008, the Pension Fund notified Reliable that it estimated Reliable's withdrawal liability to be $234,987.00. (Compl. ¶ 19 and Ex. B, annexed thereto.) By letter dated December 16, 2008, the Pension Fund advised Reliable that it determined its final withdrawal liability to be $348,489.00, to be paid in seven quarterly payments of $50,894.00 and one final payment of $3,099.00, commencing no later than sixty days from December 16, 2008. (Compl. ¶ 20 and Ex. C, annexed thereto.) Reliable failed to remit the required payments. (Compl. ¶ 21.) The Pension fund advised Reliable by letters dated July 14, 2009 and March 18, 2010 of its failure to make the required payments and informed Reliable that the failure to pay the outstanding withdrawal liability would constitute a default resulting in the total amount owed, as well as interest, becoming immediately due and payable. (Compl. ¶¶ 22, 24 and Ex. D-E, annexed thereto.) Reliable failed to make any of the required payments. (Compl. ¶¶ 23, 25.)

Reliable failed to answer the Complaint or otherwise appear in this action. The Clerk of the Court certified Reliable's default on June 9, 2010. An inquest was held before the undersigned on September 14, 2010. Reliable did not appear at the inquest.

Diane Gleave, an actuary employed with The Segal Company, an employee benefits consulting firm that provides services to the Pension Fund, testified on behalf of plaintiffs at the inquest. (Tr. 3.) Ms. Gleave testified that in her role as an actuary, she supervised the creation of a report on the withdrawal liability due and owing for Reliable. (Tr. 4.) According to Ms. Gleave, Reliable's date of withdrawal was April 4, 2008. (Tr. 5.)

Ms. Gleave testified that in order to calculate withdrawal liability, one first must calculate the under-funding of the Pension Plan as of a certain date, which represents the total "unfunding" for all of the employers . (Tr. 6.) A piece of that "unfunding" is then allocated to the withdrawing employer based on the employer's total percentage of contribution to the Pension Plan. (Tr. 6.) Ms. Gleave testified that the total withdrawal liability calculated for Reliable amounts to $348,489.00. (Tr. 15.)

Ms. Gleave further testified about the calculation of interest prepared under her supervision. According to Ms. Gleave, since Reliable defaulted and the entire amount of outstanding withdrawal liability became immediately due, interest accrues on the entire amount for every day the principal remains unpaid. (Tr. 16.) Interest was calculated using quarterly rates published by the Pension Benefit Guaranty Corporation ("PBGC") from the date Reliable was deemed to be in default - February 14, 2009 - to the date of the inquest - September 14, 2010 - for a total amount due of $18,568.85. (Tr. 17.)

In addition to the principal amount and interest due and owing, plaintiffs also seek to recover liquidated damages, attorney's fees, actuarial fees, costs and post-judgment interest, for a total damages award of $464,636.94.

DISCUSSION

I.  Default Judgment

When a party fails to appear or defend an action by an adverse party, a default may be entered against the non-moving party.  See Fed. R. Civ. P. 55.  After entry of the default, "a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability."  Time Warner Cable of N.Y. v. Rivera, No. 99-2339, 1995 WL 362429, at *2 (E.D.N.Y. June 8, 1995); see also Time Warner Cable of N.Y. v. Barbosa, No. 98-3522, 2001 WL 118606, at *5 (S.D.N.Y. Jan. 2, 2001) (quoting Transworld Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)).  Damages, however, must be proven, usually "at an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed."  Rivera, 1995 WL 362429, at *2 (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1993)).  Plaintiffs are "entitled to all reasonable inferences from the evidence [they] offer[]."  Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

Plaintiffs commenced the within action on March 29, 2010.  A copy of the Complaint was served on Reliable through personal service on its President, John Goode, on April 10, 2010.  On June 9, 2010, the Clerk of the Court certified that Reliable had not answered the Complaint or otherwise appeared in this action.  Nor did Reliable appear at the inquest held before the undersigned on September 14, 2010.

Based on the foregoing, I recommend that a default judgment be entered against Reliable Fire Protection Corp.

II. ERISA

ERISA requires every employer who enters into a collective bargaining agreement to make those contributions "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Trustees of such plans have a fiduciary duty to safeguard the employees' funds under the common law of trusts as well as ERISA. See Central States, S.E. and S.W. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 569-71 (1985). To ensure that employers will make their contributions in a timely manner, Section 502(g)(2) of ERISA provides for additional monies to be paid by delinquent employers. See Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, 68 F.3d 1502, 1506 (2d Cir. 1995). Section 502(g)(2) of ERISA provides, in pertinent part:

> In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan - (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of - (i) interest on the unpaid contributions, or (ii) liquidated damages provided under the plan not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant.

29 U.S.C. § 1132(g)(2).

III. Calculation of Damages

A. Unpaid Withdrawal Liability

Based on the testimony and the documents provided in connection with the inquest held on September 14, 2010, I find that the unpaid withdrawal liability due and owing by Reliable is $348,489.00 and recommend that plaintiffs be awarded that amount in damages.

B. Interest

Pursuant to Section 502(g) of ERISA, plaintiffs are entitled to interest on the unpaid withdrawal liability. See 29 U.S.C. § 1132(g)(2)(B). Plaintiffs have calculated interest through the date of the inquest - September 14, 2010 - at various quarterly rates published by the PBGC that range from 3.25% to 4.0%. The total interest sought through September 14, 2010 is $18,568.85. Accordingly, I recommend that plaintiffs be awarded the amount of interest sought and that they be directed to provide the Court with a per diem interest calculation so that additional interest may be calculated through the date of judgment entered herein.

C. Liquidated Damages

ERISA provides that plaintiffs are entitled to liquidated damages in the amount of twenty percent (20%) of the unpaid withdrawal liability. See 29 U.S.C. § 1132(g)(2)(C). This amounts to $69,697.80 in liquidated damages, which I recommend plaintiffs be awarded.

D. Post-Judgment Interest

28 U.S.C. § 1961 states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The very language of the statute ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered. See 28 U.S.C. § 1961(a) (stating that "[i]nterest shall be allowed") (emphasis added); see also Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."). "Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the

judgment." 28 U.S.C. § 1961(a). This interest is to be "computed daily to the date of payment." Id. § 1961(b).

Accordingly, I recommend that plaintiffs be awarded post-judgment interest on their monetary award, to be calculated pursuant to 28 U.S.C. § 1961.

F.   Attorney's Fees

Section 502(g) of ERISA allows plaintiffs to recover their reasonable attorney's fees and costs. See 29 U.S.C. § 1132(g)(2)(D). Attorney's fees should be "documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998).

Here, plaintiffs initially requested $16,113.43 in attorney's fees. Plaintiffs were afforded the opportunity to supplement their fee request to include those hours expended in connection with the inquest. Plaintiffs' revised fee request is $22,531.54, which appears to aggregate their fees and the costs incurred in this action. When costs are deducted, the total amount of attorney's fees sought is $21,397.50.[1]

The hourly billing rates range from $75 per hour for what appears to be paralegal time to $450 per hour for partner time[2] and contemporaneous time records detailing the hours expended

---

[1] The Court notes that the actual amount requested by plaintiffs is $21,816.50, which includes $419 in time that is expressly referenced as "unbillable" in plaintiffs' counsel's billing records. (Pl. Supplemental Statement of Damages, Ex. C.) Since it appears that plaintiffs' counsel did not bill its client for this $419 in "unbillable" time, the Court has deducted that amount from the fee request.

[2] Associates appear to be billing at various rates of $160 per hour, $225 per hour and $325 per hour.

in connection with this litigation were submitted to the Court. Although the hourly rates charged by counsel are within the acceptable rates employed in this district, I find the fees requested to be excessive. This was a simple default action in which no discovery was taken and the only motion filed was for a default judgment. Moreover, the inquest held before the undersigned was the only court appearance plaintiffs' counsel attended. Yet, plaintiffs' counsel had seven attorneys and support staff billing time on this action for a total of 62.15 hours. I find such a fee request to be unreasonable in light of the simplicity of this action.

Accordingly, I recommend that plaintiffs' fee request be reduced by forty percent (40%) and that plaintiffs be awarded $12,838.50 in attorney's fees. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (stating that the court may make across-the-board percentage reductions where the fees and/or hours requested are excessive); see also Gesauldi v. MBM Indus., Inc., No. CV 10-2607, 2010 U.S. Dist. LEXIS 96319, at *6-8 (E.D.N.Y. Sept. 13, 2010) (reducing requested hours from 47.1 to 35 and finding $11,175 in attorney's fees to be reasonable in an ERISA default action).

G.  Actuarial Fees

Plaintiffs also seek to recover their actuarial fees associated with the audit conducted in this action in the amount of $4,909.75. The costs of an audit are routinely recoverable in ERISA actions. See, e.g., Gesualdi, 2010 U.S. Dist. LEXIS 96319, at *5 (awarding $4,260 in audit costs); Masino v. A to E, Inc., No. 09 CV 1651, 2010 U.S. Dist. LEXIS 95583, at *22 (E.D.N.Y. Sept. 3, 2010) (awarding $1,137 in audit fees); Gesualdi v. Andrews Trucking Corp., No. 09 CV 565, 2010 U.S. Dist. LEXIS 54596, at *3 (E.D.N.Y. June 3, 2010) (awarding $13,382.50 in audit fees). Accordingly, I find the actuarial fees requested of

$4,909.75 to be both recoverable and reasonable and recommend that they be awarded to plaintiffs.

H.  Costs

As stated above, ERISA permits the recovery of plaintiffs' reasonable costs as well. See 29 U.S.C. § 1132(g)(2)(D). Plaintiffs' have submitted an itemized list of expenses in the amount of $715.04. The costs incurred pertain to filing fees, process server fees, telephone calls, shipping fees, and legal research, all of which I find to be reasonable. Accordingly, I recommend that plaintiffs be awarded costs in the amount of $715.04.

RECOMMENDATION

For the foregoing reasons, I recommend that plaintiffs' motion for a default judgment be granted. I further recommend that plaintiffs be awarded damages as follows: (1) unpaid withdrawal liability in the amount of $348,489.00; (2) interest through September 14, 2010 in the amount of $18,568.85, with additional interest to be awarded through the date of judgment herein, provided that plaintiffs provide the Court with a per diem interest calculation, as recommended above; (3) liquidated damages in the amount of $69,697.80; (4) attorney's fees in the amount of $12,838.50; (5) actuarial fees in the amount of $4,909.75; and (6) costs in the amount of $715.04, for a total monetary award of $455,218.94, plus post-judgment interest to be calculated pursuant to 28 U.S.C. § 1961.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk

of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
December 3, 2010

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge